Good morning, Your Honors. Joseph Guglielmo on behalf of Appellants Mauricio Chavez, Vincent Bonsignore, and Zanetta Bonsignore. Before we begin, I'd request that I'd like to reserve three minutes for rebuttal. Your Honor, we believe the District Court erred in dismissing the second amended complaint, finding that the claims were based entirely on a lack of substantiation. Help me on something. Yes. The theory of the claim is that Nestle misrepresented this Juicy Juice. The representations appear to be that Juicy Juice is good for you. The complaint appears to plead that you would have to drink an awful lot of it to do any good, and that the amount of fish oil or vitamin E or whatever was in it, the minimum requirements to do any good are much higher than you'd get unless you drank a baby, drank a quart and a half of it or something like that. Nevertheless, when I looked through them, I couldn't find anywhere where Nestle said, all you need to do is drink Juicy Juice. All you need to feed your kid is Juicy Juice. Juicy Juice will give your infant all the nutrients your infant needs. In the absence of those representations, I didn't understand what the false representations were supposed to be. Where is the why? Your Honor, the why is that unlike other advertising and marketing that is directed towards children and products that are manufactured. This isn't directed toward children. It's directed to adults to buy for children. Yes, Your Honor. That was my – I'm sorry. I misspoke. Yes. The product is depicted solely by itself in the advertisements, both the print advertisements and the television advertisements. It's not shown as part of a balanced breakfast like a number of other advertisements. So this is the sole – Where's the why? They don't – true, they just show you Juicy Juice. They don't show you Juicy Juice along with breast milk and carrots and strained peas and all these other things. But why is it a lie not to? Well, Your Honor, it's deceptive because DHA is the product that you're referring to, and the specific Juicy Juice product that you're mentioning is the Juicy Juice brain development product, which states it has DHA. We didn't say that. Does it? It has DHA. It says 16 milligrams of DHA, which would require a child of 2 years or under to drink approximately 50 ounces of juice. This is where you were going with the question. That's my court – court to hand. So basically you would have to consume about 800 to 1,200 percent of what the American Academy of Pediatrics suggests is the recommended amount of juice. It's a lot of juice. It's a lot of juice. Pretty much impossible for a 2-year-old to be consuming that much juice. That's the deceptive nature. But what is – what is the why? They don't say that it's all you need. Your Honor, they say – they promote the product as brain development. They have in the TV commercials, as well as on the label, it's – But there doesn't seem to be any dispute that along with other things that are good for the kid, it may very well advance that function. Your Honor – Are you saying it's a lie? Are you saying it's just misleading? We say it's misleading because it doesn't fully disclose the fact that 16 milligrams is essentially – for children under 2 – is essentially an insignificant if – Just so I get this in perspective, you're not saying anything there was factually false. You're saying – With respect to the Juicy Juice DHA product? Well, we'll take them one at a time. With respect to DHA. The DHA product does not say that – the statement itself that it has 16 milligrams of DHA is not false in and of itself. So the problem with it is what? It is deceptive. And it is likely to deceive. The consumer is likely to believe, like our clients believe, that by consuming this juice, this product is going to promote cognitive development and enhance one's brain development. The name of the product is brain development. It's not Juicy Juice with DHA. It's Juicy Juice brain development. So the intent of Nestle, through its advertising – Like fish. The government tells you to eat fish for brain development. But ordinary people don't infer that all you need to do is eat fish. Your Honor, they had an advertisement indicating a picture of DHA along with, for example, a piece of salmon. Salmon is 600 milligrams, and we set forth that in our papers. This has 16 milligrams. But salmon is real expensive. Understood, Your Honor. But my point is, they actively and intentionally promoted this product as a product that would provide brain development. That's the name of the product. That's what the advertising and marketing says. And you're not saying it doesn't. You're just saying you'd need a very large quantity of it to make much difference. I'll break it into two parts, Your Honor. As to children 2 and under, the studies are mixed. We say that in the complaint. You would have to consume a tremendous amount, as you say. As to children 2 and over, there's no studies that show any cognitive development. In fact, the study they point to – You're saying it's unsubstantiated? That is our – yes. Okay. But you can't bring that claim, isn't that right? Your Honor, yes. And that's a burden of proof issue that we believe the district court erred on. Lack of substantiation or prior substantiation theory comes from the government's investigations in the context of the FTC. In the context of the FTC in an investigation, the government says, we believe your advertising is false and misleading. Prove it's true. It's a burden of proof. At the district court, we set forth the fact that we were not intending to shift the burden of proof. And we believe that the district court erred as to the lack of substantiation theory. Specifically, the cases that the court relied on were burden-shifting cases. For example, the King Bio case that the district – Is that just for lack of sufficient substantiation, or is that limited to the FTC bringing the case? A prior substantiation case can only be brought by the FTC. In other words, a shifting of the burden. However, private plaintiffs can say your allegations are false and misleading and likely to deceive because you give someone an impression that you're providing something that you otherwise have no proof of. And for example, Your Honor, we cite in our papers the Cardenas case, which comes out of the Eastern District of California, which rejected this very argument that the appellees make, lack of substantiation. There, they said that the claims were not supported by clinical cause and effects studies. And the Court said, denying the motion to dismiss, saying plaintiff alleges this, so the defendant's claims are most likely to be false. Again, this is at the motion-to-dismiss stage. The cases that the appellees cite are a case at trial, which is the King-Bio case, where the plaintiff in that case specifically argued that it had no burden, that essentially the burden of proof was on the defendant to substantiate its claims. The same thing in Fraker. In Fraker, another case they cite, specifically the plaintiff sets forth and attaches cut-and-paste allegations from an FTC consent order. It says, the FTC consent order therefore proves my case. I have nothing else I need to do. And there, the Court, under Rule 11, struck the allegations and said, you need to set forth some allegations that state a claim. And here we brought claims under California's unfair competition law and false advertising law. And we believe, Your Honor, furthermore, that the Williams v. Gerber case supports our facts, because essentially we believe these allegations, taken in total, state a claim, because we believe that the allegations are likely to deceive. The case on point that we cite in our papers is the Rikos case. And I know that case is out of the Southern District of Ohio. But in that case, specifically, the allegations were similar to the allegations we make. On a motion to dismiss, the Court denies the motion to dismiss and says Procter and Gamble made claims that are essentially false and misleading. The defense authority is a district court decision from another circuit. The district court – there is a Cardenas case in the Eastern District of California which supports our claims. The other case that supports our claims factually and legally is the Southern District of Ohio case. There's no Ninth Circuit authority on this particular issue. The closest that the appellees come to an appellate court reviewing this particular issue is the Franyulovic case, Your Honors. That case is a summary judgment decision. And in that case, specifically, the plaintiff sought to shift the burden onto the defendant and essentially state that Coca-Cola was required to substantiate its claims before it marketed and sold in vega. Here, we didn't say that. We specifically in our complaint say that the claims are not substantiated. We also said that they're false and misleading. So in essence, Your Honor, what we believe, the district court erred on this prior substantiation, lack of substantiation. You know, in Williams, it was easy to understand where it could be misleading because it says it contains all these fruits and it has pictures of the fruits and it doesn't. But here, I'm having trouble seeing why it's like that. In Williams, there was pictures of the fruits, but there was fruit juice in the product. It was an insignificant amount. Yeah, but not of most of the fruits. Not of the other fruits, just one of them. Just one of them. But it had a picture of a whole bunch of fruits. It had a picture of a whole bunch of fruits. Different kinds of fruits. And people that are, oh, concerned about that sort of thing think, oh, you eat blueberries for this, it's good for your brain, and you eat this because it has fiber and it's good for your gut, and you eat this. And it matters whether it has a whole lot of fruits or just one fruit. Here, it has a picture of the product, and it says it has these things that are supposed to be good for you in it. And it does. And that's it. And if there were something in it to suggest to me this is all you need, then I would have a really easy time understanding it. But I'm missing something there, and it could just be denseness, so educate me. Well, Your Honor, the issue I think I was trying to point out with the brain development product itself, again, this is not simply an issue where – I understand the prove it part, but that's just for the FTC. Like, you say your blade shaves better than the competing blade. You have to prove it to the FTC. But you don't have to – you can't have private class actions based on it. Let me clarify that point, Your Honor. We can allege that the product has no substantiation. It's our burden of proof. Simply because we – Well, why does it matter? Why does it matter? If it's only material in an FTC claim, whether it's substantiated, then it really doesn't matter in a private action whether it's substantiated. The Cardenas case said the fact that it wasn't substantiated meant that it was false and misleading. And that's the point. The Rikos case as well. And, again, this is a burden of proof issue. Prior substantiation and lack of substantiation are burdens of proof. No one is attempting – No one is attempting to justify having the burden of proof shifted on a – on a motion to dismiss, much less a trial. And so to answer your first point, Your Honor, we believe that the statements that they make, the TV statements, the advertisements that our clients saw and relied upon – again, there was an argument that somehow we didn't satisfy 9b, but the district court didn't dismiss on that basis. The labeling, the TV, and the Internet ads give the consumer or give the parents of the consumer the mistaken belief that this is going to actually promote development, brain development, and then the immunity product. What about the immunity product? I'm just going to ask you about the immunity product. What's misleading about that? What's misleading about the immunity product is similar in that it promotes digestive health and it promotes an improved immune system. Essentially, the product has no more vitamin C than any other product. Essentially, the amounts of zinc and prebiotic fiber are insignificant. So in essence, it's a similar type of thing, but it's even more remote in that there's no studies such as the DHA study with fish oil that they claim is related in the primary jurisdiction context. The fish oil studies go both ways. On fiber, you cannot find a doctor who will not recommend fiber. There is no scientific proof that fiber helps. Doctors theorize that it probably does. That doesn't make the doctor's recommendation of fiber misleading. I agree, Your Honor. When you promote a product as juicy juice immunity, you're specifically setting yourself out as a product that's going to promote immunity and digestive health. Those are the statements that they make, not I. Those are the statements they make in their label. What exactly is misleading about that? That they're promoting immunity and digestive health? Yes. The amount of zinc, vitamin C, and prebiotic fiber are so insignificant that there's essentially, we believe, and we'll have to prove at a trial, that there is no benefit whatsoever. You can drink any other juice and drink this juice and there's not going to be any substantial benefit to you. Well, I mean, all juices may be the same, but that's not what you're really arguing is it? Well, we're saying that they tout these juices as superior to other juices. They charge a premium for these products over their own juicy juice products. If it's not false and misleading, then it doesn't matter, does it? If it's likely to deceive, we believe it states a claim, Your Honor. And we believe that as the immunity product, there's a risk. You're saying if you charge a higher price, people will use the price as information suggestive of quality, and if your quality is not higher, then the price itself is misleading? I think you have to look at it in whole. I agree with your point, Your Honor. But it's not just simply the price point. Because some people charge higher prices simply because they can't. They have the ability in the marketplace to charge a higher price. Here, they specifically tout the product as immunity. With the brain development product, they're specifically promoting the product as brain development. I know I'm running out of time. I think most doctors think it probably is good for people. The big danger with supplements is there's a very high risk of the patient taking too much, and too much of any of the supplements, including zinc, is extremely harmful. There doesn't seem to be real good scientific evidence on any of this stuff. And just my final point, Your Honor. I know I'm running out of time. You're out of time, actually, but go ahead. Oh, I'm sorry. I had 16 minutes. No, you're over. Oh, that's going up, not down. I apologize. Oh, go ahead. Finish your sentence. On the primary jurisdiction point, the reason why the FDA hasn't done anything is because there's no science to prove it. So primary jurisdiction shouldn't apply here. So we believe the Court also erred in that regard. Thank you. Thank you. Morning. Morning, Your Honor. Charles Rothfeld, Mayor Brown, representing Defendant Appley Nestle. Thank you. And I'll start with a question that Judge Kleinfeld raised. What exactly is alleged to be false about statements made about the DHA product? In this case, the district judge dismissed three consecutive consolidated class-action complaints. After dismissing the first two, he very patiently allowed the plaintiffs to replete, and he admonished them to be aware of the requirements of Rule 9b to plead their claims of fraud and specificity to the court. Counsel, could you get to something that's been on my mind here so I can get it off my mind? It looked to me like your most difficult argument to sustain was your primary jurisdiction argument. But I wasn't clear that you needed it or that we had to reach it. Do we have to reach it? No, you do not. I think that there are multiple independent grounds to dismiss these complaints. I think number one is that we could decide the whole case, and if we went your way, we would never have to talk about primary jurisdiction. That is absolutely right. Judge Wu in the district court identified primary jurisdiction as an alternative basis for dismissing the claims. But it was an alternative basis, and there's no need for the court to reach it. If it dismisses on what we think are a number, you know, a whole goulash of substantial claims, substantial reasons for dismissing these claims, no. Judge Kleinfeld mentioned the problem that's on his mind. Let me tell you about the problem that's on my mind. Why can't we read this complaint in the light most favorable to them to understand it to be an allegation that you have, that you are falsely, or I shouldn't say falsely, that you are deceptively and misleadingly suggesting that there's enough of these ingredients to be beneficial when, in fact, they're only trace amounts and they're therefore not beneficial? Why can't we read the complaint that way? Well, I think one reason is the complaint doesn't actually say that. The complaint is it's careful in its phrasing. Nowhere in the complaint, operative complaint that's now before the Court, the Second Amendment Consolidated Class Action Complaint, is there an allegation that there is not enough DHA in the DHA product to be beneficial, and nowhere is there a specific allegation that the reasonable consumer is going to look at the label and the marketing of this product and conclude that, as Judge Feinfeld suggested in one of his questions, one would have to conclude that the reasonable consumer will believe that the amount of the DHA in this product in and of itself is sufficient to provide all the health benefits. Well, again, reading it in the light most favorable to them, I look at paragraph 32. Before that, it talks about a lack of substantiation. Then in paragraph 32, it says, moreover. So now they've changed, you know, gone on to a different thing. Moreover, there is an exceedingly small amount of this stuff in the product. Paragraph 33, yet despite a sound basis for doing so, they affirmatively represent that this will enhance brain development. I mean, I don't understand why you read those together. They're not making an allegation. True or false, I don't know. That'll have to be a trial. But why they're not making an allegation that there's not enough in here to do really what it purports to do. Well, I think that one reason is that this is a fraud complaint. It has to satisfy the requirements of 9B. They have to say specifically what it is about the statement that is misleading. Well, they go on to say it's 3 ounces of salmon, probably 600 milligrams. This thing has 140 milligrams of DHA. The American Academy of Pediatrics says how much you need. I mean, it looks pretty specific to me. Even the product that you were identifying, which says exceedingly small amount, indicates that under that WHO study that they are referring to, about 10 percent of the amount recommended by that study is provided by a single serving of the juice. Maybe you win a trial. I mean, I don't understand why the complaint isn't sufficient. Well, I think just on this one point, and there are other things that are wrong with the complaint, real lack of reliance allegations, for example, that I'll get to in a second. But just on that one point, I think that for it then to satisfy the pleading standard, they have to state an allegation, as Judge Kleinfeld suggested in one of his questions to my friend, that someone would have to read the marketing of this product and the label of this product and conclude that a single serving is going to provide all the DHA that's necessary to be beneficial. And I don't think any reasonable consumer would look at this, at the advertising here or at the label. Well, then you win. Then you win. Okay? But the question is not whether you ultimately will prevail. The question is whether the complaint alleges enough to survive a motion to dismiss. Well, that's right. But there are certainly cases. No. If they say that what I've just read, they give you all the ingredients and how much and how much you're supposed to have, and they represent that this is not enough to really do anything, why isn't that enough to state the complaint, state a claim? Again, I think there are certainly cases, both of this Court applying California law and of California cases, holding that it is a question of law in the first instance whether or not a reasonable consumer could take this to be a misleading statement. There are cases that have dismissed claims on the 12b6 stage, false advertising claims, because no reasonable consumer would be misled. And I think that to be misled here by the statement that you're referring to, a consumer would have to look at this and think they're being told not just that DHA is good for brain development, and that's not disputed as a factual matter by our opponents. They would have to conclude that a single serving of one juicy juice container is enough to provide all the benefits. If that's not what they're being told, then there's nothing misleading that's alleged about the product. There's no allegation that DHA is not beneficial. There's no allegation that the product doesn't contain DHA.  The allegation is you don't put enough in to do any good. Well, but the allegation is that a consumer would look at this and think they're being told that this single serving is enough to satisfy their daily amount. And I don't think a reasonable consumer would look at this. For the reasons Judge Kleinfeld colloquially suggested, I don't think a reasonable consumer would look at this and come to that conclusion. Let me go to an additional point kind of related to that. Under Rule 9b, plaintiffs have to allege with particularity their reliance on the false statement. They don't allege reliance in an adequate way in their complaint. The complaint is very careful in what it says about their reliance. There are a number of statements in the complaint that the plaintiffs allege were misleading, but they don't allege to have seen. By definition, it can't be a reliance statement. I'm sorry, I didn't hear you. There are a number of statements that they allege are misleading, but they don't allege that they saw or heard them. Would they need basically a retarded baby or a few of them in the name class action in order to have a private class action as opposed to an FTC action? Well, to state a claim, they have to state, and again, we're just talking about whether or not there was a misleading statement here. There are other things that are wrong with this complaint, such as lack of reliance, lack of specificity. But if we assume that what they allege is that this product does not contain enough DHA to have any value, that has to be something that would mislead a reasonable consumer, not just, you know, any consumer who might possibly take it wrong. It has to be the law is very clear that it's a reasonable consumer standard. And for the reasons that were suggested by Judge Kleinfeld's colloquy, again, I don't think a reasonable consumer would look at this product which says DHA, building block for brain development, product contains DHA. That's telling the consumer all they need to do to get any benefit from this product. Why do you say they didn't allege reliance? I'm looking at paragraph 65, Plaintiff Chavez, during each purchase of immunity apple and so forth, relied upon the following misleading statement. It goes on. Why isn't that a sufficient allegation of reliance? Well, I think he has to say what it is that he relied on it for, what he believed in. What he goes on to say immediately afterwards is that he relied on it for the conclusion that there was a – that Nestle had substantiation when it made the statement. And as we've been discussing, lack of substantiation is simply not enough to make that a claim under the California false advertising laws. They don't specifically allege that they believed that they were being told that a single serving of this provided all that they needed. Plaintiff Chavez purchased immunity apple in very believing that the defendant had a reasonable basis for its representations that the product promoted immunity and digestive health, which, in fact, the defendant did not. A reasonable basis. That's saying that they believe that a reasonable basis. I mean, this is a pleading issue. I mean, I don't see why this, you know, why this doesn't get them in the reliance door. Well, again, I think, Your Honor, because they have to plead with specificity, I think they have to say not only what statement they relied upon, but what they relied upon it for, what they say. And they do say specifically they relied upon it for their belief that Nestle had substantiation for making the statement. Lack of substantiation simply does not provide a basis for a claim, false advertising claim in California. They don't say that they relied upon a statement by Nestle that this was going to provide health – specific health benefits, and it didn't. They are very careful in how they phrase their complaint not to make that allegation. And so it's defective not only because no reasonable consumer would be misled by this statement. It's surely these accurate and factual statements about the benefits of DHA and how much DHA is in it. Have they – let's see. What they say they relied on was a statement that the juice would help support immunity, that it contained vitamin C and zinc for immunity, plus prebiotic fiber for digestive health. Is there any pleading in here, any paragraph in the pleading that says that the product does not help support immunity or does not contain vitamin C or does not contain zinc or fiber? There are no such allegations in the complaint. As I read the complaint, I don't think that's true. Is there any difference that there was enough here to get the maximum benefits for immunity, digestive health, and so forth? I don't think that there is, Your Honor. I think that if you read the complaint as to the immunity product carefully, essentially the only thing that they allege – So it's like eat your vegetables, they're good for you, but it doesn't mean all you need to eat is your vegetables. That's exactly – exactly right. The centerpiece of their immunity complaint is what you identified in your colleague They are saying that because the product, in their view, is no better than other juicy juice products, doesn't provide you more immunity benefits than other juicy juice products or competitor's products, it is misleading, a misleading omission unless Nestle said this product is no better than other products. And there clearly is no requirement under California law that manufacturers state affirmatively our product is no better than our competitor's product. So long as there's nothing misleading. Getting back to California law for a second, these claims are brought under the unfair competition law and the false advertising law. Is that – do I understand that right? That's right. Can you aim me to a case that says that 9B applies to complaints of that sort? I can, Your Honor. I ask this because these appear to be statutory claims rather than allegations of common law fraud or that sort of thing. That's true, but in the – So can you tell me – I don't want to distract you. Can you find me the case that says 9B applies here? I'm sorry. I should have that at my fingertips, Your Honor. I apologize that I don't. Your representation is there's no question 9B, under California law, 9B applies to these kind of statutory claims. That is my representation. And Judge Wu in the district court concluded that that was true. The plaintiffs did not dispute it. They said that they satisfied 9B. So I think that there is no question. The California court, the QuickSent case, for example, cited by our opponents, which discusses the reliance requirement under the false advertising and disinspection statute, and says that very clearly that this incorporates common law fraud principles, and therefore, necessarily, Rule 9B would apply. Again, Your Honor, I apologize. I should have these at my fingertips. I'm looking at Judge Wu's order, and I'm just quickly glancing at it. Again, I don't see where 9B is cited here. Can you help me with that? In fact, he says, that plaintiff and Federal court are required to give only a short plain statement of the claim, cites Rule 8. But he goes on, then, to discuss Rule 9B. Then Rule 12b-6. In fact, he specifically admonished the plaintiffs after the dismissal of their first consolidated complaint that Rule 9B applied and that they should take care to looking at the order that's under appeal. I'm not finding anything from Judge Wu that this doesn't satisfy 9B or that 9B applies. Maybe I don't know. There's a lot here that doesn't seem to be here. Well, I think, Your Honor, instead of taking the Court's time, that we will have to submit a letter to the Court which points you both to cases that identify Rule 9B's client and statutory claims of this sort and to where Judge Wu identifies them. Okay. Go ahead. I guess the one remaining point I would make is that, you know, on the primary jurisdiction question, assuming that the plaintiff survived everything else, we think there would be a compelling case for application of primary jurisdiction doctrine here. I mean, there is no question that the issue, at least in the DHA product, the plaintiffs can prevail only if they're able to establish both that DHA either has or provides no benefit or that the amount is insufficient, the amount in the product is insufficient, and there's no doubt that is a typical complex scientific question that's within the jurisdiction. The reason that I found that difficult was, as far as I can tell, the FDA has not issued and there's no particular reason to think it's likely to issue a ruling about how much DHA per day per kilogram a child ought to have for brain development. The WHO has nothing to do with primary jurisdiction. It's just a U.N. organization. It's not part of the U.S. government. And in the absence of the FDA even speaking or being inclined to speak on the matter, it's strikes me as an open question and not so easy whether California can. Well, I the FDA has currently before it a rulemaking proceeding addressed to DHA in particular, and it has not dismissed that proceeding. We have to assume that it's still. Oh, it does have a pending proceeding. It does have a pending proceeding, which we discussed in our brief regarding. I forgot that. Thanks. So, and there's no question it is within the jurisdiction of the FDA, so I think it would be an appropriate discussion. And so, Your Honor, we will file a 20HA letter, which answers the judge's open question. Thank you. Thank you, Your Honor. Thank you, Your Honor. Sir, you actually used up all your time. We'll give you a minute, but let me ask you, do you agree that 9B applies to these kind of claims? Your Honor, 9B applies to the elements of the claim, the who, what, where, but not to reliance. Stern's Ninth Circuit said it would not apply to reliance. Reliance is not an element of the claim under the UCL or the FAO. Briefly, the rulemaking that counsel points to is a 2007 rulemaking regarding nutrient content, whether the designation's high in DHA, an excellent source of DHA, would apply. It's a 2007 proposed rulemaking. Nothing has happened. It was in response to a request made in 2004 and 2005 by fish producers who were attempting to slap on a label saying high in DHA or a good source of DHA, and nothing's happened. Those particular statements are not in our complaint. We're not challenging nutrient content claims. No one says we are. So primary jurisdiction wouldn't apply. And back to the point, I think, that you asked counsel at the very beginning, if you find that, I think, the primary jurisdiction argument is in error because he based it, the district court based it entirely on a lack of substantiation theory. And the lack of substantiation theory is a burden of proof. And since we didn't attempt to shift the burden of proof, the primary jurisdiction argument likewise fails. And, Your Honor, I have no, sorry, I've been over my time. Thank you.  Thank you, gentlemen. The case just argued is submitted.
judges: Goodwin, Kleinfeld, Silverman